UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

ADAM WOOD                                                        Plaintiff

v.                                                           Civil Action No. 4:25-cv-18-RGJ

ASCEND LOANS, LLC                                 Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Ascend Loan ("Ascend") moves to compel arbitration in named Plaintiff Adam Wood's ("Wood") class action lawsuit. [DE 17]. Wood responded [DE 20] and Ascend replied [DE 21]. Briefing is complete and the matter is ripe. For the reasons set forth below, the Court **GRANTS** Ascend's motion to compel arbitration. [DE 17].

**I.**      **BACKGROUND**

Wood brought this class action lawsuit on behalf of himself and all other similarly situated individuals alleging that Ascend falsely presented itself as a tribal lending entity in order to circumvent state usury laws and grant loans with interest rates far in excess of those permitted under Kentucky law. [DE 1 at 5]. Wood alleges that Ascend represents to customers that it is wholly owned by the Habematolel Pomo of Upper Lake Tribe ("Tribe")—a sovereign nation—when in reality, Ascend hides behind the guise of a Native American tribe to invoke sovereign immunity and avoid usury laws. [*Id.* at 2]. Wood maintains that Ascend fails to function as a legitimate "arm of the tribe," so it cannot claim sovereign immunity and therefore is subject to Kentucky's usury and consumer protection laws. [*Id.* at 7–10]. As a result, he asserts claims that Ascend violated KRS 360.010, KRS 360.030, and KRS 367.110 by issuing loans to Kentucky residents with interest rates exceeding 400 percent. [*Id.* at 4, 12–13].

Wood attaches to his complaint twenty loan agreements evidencing the allegedly usurious loans made by Ascend. [DE 1-1–1-20 ("loan agreements" or "agreements")]. Each loan agreement contains a provision defining the "governing law" as "the laws of the Tribe and applicable U.S. federal law" and requiring the customer to "agree that the laws of the Tribe rather than the laws of your state or any other state will apply." [*See, e.g.* DE 1-1 at 34]. Each agreement also contains a separate arbitration provision, which provides, in relevant part:

> **Agreement to Arbitrate**. You and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement.
>
> **What Rights You are Waiving**. Since both you and we agree that we will resolve all disputes through individual arbitration, (a) WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL; and (b) ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. YOU AND WE ARE WAIVING THE ABILITY TO SERVE AS A PRIVATE ATTORNEY GENERAL OR BRING A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING (the "Class Action Waiver")
>
> **What is Covered.** All claims asserted by us against you or your heirs, successors, representatives, or assignees. All claims asserted by you against us and/or any of our direct or indirect parent companies or entities, affiliated entities, vendors, or service providers, and each of their employees, agents, representatives, directors, officers, shareholders, governors, managers, members, and other affiliated persons (hereinafter collectively referred to as "related third parties"), including, without limitation, claims for money damages and/or equitable or injunctive relief.
>
> **Who is Covered.** This Arbitration Agreement, in addition to us and you, covers our and your heirs, successors, representatives, and assigns, and our related third parties.
>
> **What Law Applies to This Arbitration Agreement.** This Arbitration Agreement involves interstate commerce. It shall be governed by and subject to the FAA for all purposes. The Arbitrator shall decide all issues arising under or relating to the Loan Agreement, as described above, including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement, in accordance with the Governing Law.

[*e.g.* DE 1-1 at 20–21].[1] The agreements also contain a provision giving customers the right to opt out of the arbitration provision within 21 days following their signing of the loan agreement and providing instructions on how to opt out. [*See, e.g.*, DE 1-1 at 36–37]. Finally, the loan agreements conclude that by signing the agreement,

> [y]ou acknowledge, represent and warrant that: (a) you have read, understand, and agree to all of the terms and conditions of this Agreement, including the Arbitration Agreement, and the Class Action Waiver, (b) this Agreement contains all of the terms of the agreement between you and us and that no representations or promises other than those contained in this Agreement have been made, [and] (c) you have reviewed and been given the option to print or retain a copy of this Agreement before you signed it, as well as our privacy policy . . . .

[*Id.* at 23]. Pursuant to this arbitration agreement, Ascend maintains that (1) the parties formed a valid agreement to arbitrate all claims arising out of the loan agreement, and (2) the parties delegated the question of arbitrability to an arbitrator, so as a threshold matter the Court may not even decide whether the claims are arbitrable. [DE 17 at 224, 229].

## II.   STANDARD

Congress enacted the United States Arbitration Act of 1925 ("FAA"), 9 U.S.C. §§ 1–16, and federal and Kentucky law favors enforcing arbitration agreements. *See Whalen v. Lord & Moses, LLC*, Case No. 09-CV-0192-JBC, 2009 WL 3766327, at *1 (E.D. Ky. Nov. 10, 2009). The FAA's purpose was to put arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2)). Section 4 of the FAA provides that a party may petition a court to compel arbitration.

---

[1] The provisions in loan agreements 18–20, though structured differently, are materially the same. [*See* DE 1-18–1-20].

FAA § 4. Upon such a petition, the court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Yet "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.* Thus, the Court first "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). In making this determination, the Court must resolve any doubts in favor of arbitrability. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Relevant here, in addition to agreeing to arbitrate the merits of a dispute, parties to an arbitration agreement may also agree to arbitrate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted). An agreement to delegate the question of arbitrability to an arbitrator is "simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Rent-A-Center*, 561 U.S. at 70. Thus, "[t]he additional agreement is valid under § 2 [of the FAA] 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 [of the FAA] and compelling arbitration under § 4 [of the FAA]." *Id.* "Such an agreement, commonly known as a delegation provision, requires '"clear and unmistakable" evidence that the parties agreed to have an arbitrator decide' arbitrability." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020)). In other words, a purported

4

delegation provision will only be treated as such if its language clearly and unmistakably reflects the parties' intent to arbitrate arbitrability. "In effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844. The Sixth Circuit has held that incorporation of or reference to the American Arbitration Association ("AAA") rules constitutes "clear and unmistakable evidence" that there was an agreement to delegate issues of arbitrability, as those rules "clearly empower an arbitrator to decide questions of 'arbitrability.'" *Id.* at 845–46.

A "valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022); *see also Henry Schein, Inc.*, 586 U.S. at 68 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."). Yet, if a party challenges the validity of a delegation clause, "the court, rather than the arbitrator, must address those challenges." *Becker*, 39 F.4th at 355. This is because such a challenge "turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability." *Id.* However, a court can decide the question of whether a delegation clause is enforceable only if the party opposing the motion to compel arbitration "challenged the enforceability of [the delegation clause] '*specifically*.'" *Id.* at 356 (emphasis added) (citing *Rent-A-Center*, 561 U.S. at 72). In other words, a party opposing arbitration must show that "the basis of their challenge is directed specifically to the delegation provision," not to the arbitration agreement as a whole. *In re StockX Customer Data Sec. Breach Litiga.*, 19 F.4th 873, 886 (6th Cir. 2021) (citation modified) (quoting *Rent-A-Center*, 561 U.S. at 71–72). "A party fails to make this

5

showing if its challenge to a delegation clause 'simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole.'" *Becker*, 39 F.4th at 356 (quoting *In re StockX*, 19 F.4th at 886). "Thus, a party's challenge to a delegation clause must rest, in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole." *Id.*

## III.   DISCUSSION

Ascend argues that the loan agreements clearly and unmistakably delegate the question of arbitrability to the arbitrator both through express language and through reference to the rules and procedures of the AAA and the Judicial Arbitration and Mediation Services ("JAMS"). [DE 17 at 230–31]. First, Ascend argues that the following language found in loan agreements 1–18 constitutes an express agreement to delegate arbitrability to an arbitrator:

> **Agreement to Arbitrate.** You and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, *including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement*.
>
> . . .
>
> **What Law Applies to This Arbitration Agreement**. . . . The Arbitrator shall decide all issues arising under or relating to the Loan Agreement, as described above, *including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement*, in accordance with the Governing Law.

[DE 17 at 230 (emphasis added)]. Loan agreements 19 and 20, though phrased differently, contain the following analogous provisions:

> **Agreement to Arbitrate.** You and we agree to arbitrate all disputes and claims through confidential binding individual arbitration, *including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement*.
>
> . . .
>
> **What Law Applies to This Arbitration Agreement**. . . . The Arbitrator shall decide all disputes in accordance with the Governing Law and governmental sovereign immunity.

[*Id.* at 228; DE 1-19 at 165; DE 1-20 at 174]. Next, Ascend contends that the agreements' reference to the AAA and the Judicial Arbitration and Mediation Services ("JAMS") rules establishes a clear delegation of arbitrability to the arbitrator. [DE 17 at 230–31]. Ascend points to the following provisions contained in each loan agreement:

> **Starting the Arbitration Process**. . . . Regardless of who demands arbitration, you have the right to choose between the American Arbitration Association (1-800-778-7879) or http://www.adr.org; or JAMS (1-800-352-5267) or http://www.jamsadr.com, to administer the arbitration….
>
> . . .
>
> **Procedural Rules.** The arbitration will proceed according to the rules and procedures used by the applicable arbitration organization for consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Arbitration Agreement. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

[*Id.*]. Wood does not argue that the agreements lack "clear and unmistakable" evidence of delegation. Rather, he contends that because the agreements prospectively waive the application of state law, the entire loan agreement—including the delegation and arbitration provisions—is rendered unenforceable. [DE 20 at 429–30]. He separately maintains that the delegation provision specifically should be found unenforceable "because the prospective waiver of state law precludes an arbitrator from being able to sufficiently evaluate the arbitrability of Plaintiff's claims." [*Id.* at 429].

The Court first analyzes whether there is "clear and unmistakable evidence" that the parties have delegated the question of arbitrability to an arbitrator. Next, the Court examines whether Wood "specifically" challenges the enforceability of the delegation provision, as is required for the Court to decide the question of whether the provision is enforceable. *See Becker*, 39 F.4th at 356. Finally, assuming Wood specifically challenges the delegation provision, the Court then

analyzes the precise challenge Wood presents—whether that delegation is unenforceable due to the prospective waiver of state law.

    1.    <u>Clear and Unmistakable Delegation</u>

First, the Court finds that there is clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. Each agreement states that the parties "agree to arbitrate all disputes and claims through confidential binding individual arbitration, *including all claims regarding the validity, scope, or enforceability of this Arbitration Agreement*." [DE 1-1–1-20]. In *Swiger v. Rosette*, the Sixth Circuit found that nearly identical language "clearly and unmistakably" showed that the parties agreed to arbitrate issues of arbitrability. 989 F.3d at 506; *see also Danley v. Encore Capital Grp., Inc.*, 580 F. App'x 394, 398 (6th Cir. 2017) (finding that parties clearly and unmistakably agreed that an arbitrator would determine gateway arbitrability issues through clause requiring arbitration of "[a]ll claims relating to your account, . . . including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision"). The Agreement's reference to the AAA and JAMS rules further compels the conclusion that the parties clearly delegated the arbitrability question to an arbitrator. *See Blanton*, 962 F.3d at 845 (holding that the parties clearly agreed to arbitrate arbitrability when the agreement expressly incorporated the AAA rules into the agreement "and even helpful include[d] a link to the AAA's website"); *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (finding that agreement's incorporation of AAA rules "shows that the parties intended to send gateway questions of arbitrability exclusively to an arbitrator). Wood does not argue that the arbitration agreement lacks clear and unmistakable evidence of a delegation. As a result, the Court concludes that the parties clearly and unmistakably agreed to arbitrate questions of arbitrability.

    2.    <u>Specific Challenge to Delegation Provision</u>

Although the parties have clearly and unmistakably entered into a delegation provision, this "does not mean that delegation provision is 'unassailable.'" *Mallory v. Consumer Safety Tech., LLC*, No. 3:23-CV-00436, 2024 WL 3897144, at *5 (E.D. Tenn. Aug. 21, 2024) (citing *Rent-A-Center*, 561 U.S. at 71). A party may still challenge the validity of the delegation provision under § 2 of the FAA, and the Court "must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Center*, 561 U.S. at 7. Yet, the Court may only consider a challenge to a delegation provision that is "directed *specifically* to the delegation provision." *Becker*, 39 F.4th at 356 (emphasis added) (quoting *In re StockX*, 19 F.4th at 668). Otherwise, a clear and unmistakable delegation of arbitrability to an arbitrator requires that "any challenge to the validity of the Agreement as a whole [is left] for the arbitrator." *Rent-A-Center*, 561 U.S. at 72.

Wood contends that the delegation provisions should be found unenforceable because the loan agreements contain a choice-of-law provision requiring the application of tribal and federal law and "prospectively waiving a plaintiff's state statutory rights." [DE 20 at 422]. He asserts that choice-of-law provisions such as these render delegation clauses unenforceable for the same reason as the underlying arbitration agreement—because enforcing the delegation provision would put the arbitrator in the "impossible position" of determining the enforceability of the agreement without the ability to apply state law. [*Id.* at 423]. While Wood states that he "specifically challenges the validity of the delegation provision," the Sixth Circuit has held that a "mere statement" that a party is challenging the delegation provision is not enough to fulfill the requirement that the challenge be directed specifically to the delegation provision. *In re StockX*, 19 F.3d at 885. Instead, "courts must look to the substance of the challenge" to ensure that the party does more than simply "recycle[] the same arguments that pertain to the enforceability of the

9

agreement as a whole." *Id.* at 886; *see also Rent-A-Center*, 561 U.S. at 72 ("[U]nless [respondent] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). Thus, the Court must determine whether Wood's challenge to the delegation provision simply recycles the same arguments that he asserts against the arbitration agreement as a whole, or whether his challenge "rest[s], in part, on different factual or legal grounds" than those applicable to the agreement as a whole. *Becker*, 39 F.4th at 356.

In his response to the motion to compel arbitration, Wood first argues that the arbitration agreement as a whole is unenforceable because it requires Plaintiff to waive all state statutory rights and remedies. [DE 20 at 427]. He cites to *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, in which the Supreme Court commented in a footnote that "in the event the choice-of-forum and choice-of-law clauses operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies, . . . we would have little hesitation in condemning the agreement as against public policy." 473 U.S. 614, 637 n. 19, (1985). He then cites a series of out-of-circuit cases applying *Mitsubishi Motors Corp.*'s "prospective waiver" doctrine, under which arbitration agreements containing waivers of federal and state law were found to be unenforceable. [*Id.* at 427–28]. The crux of Wood's argument is that an arbitration agreement that purports to waive state statutory rights is contrary to public policy and thus void in its entirety. [*Id.* at 428].

Wood then reasserts essentially this same argument in challenging the delegation provision. [*Id.* at 429]. For instance, he states

> [a]s explained above, there is little question that the arbitration clause, which contains the delegation provision, is unenforceable. The delegation provision is likewise unenforceable. First, the 'delegation clause is unenforceable for virtually the same reason as the underlying arbitration agreement-the Loan Agreement's wholesale waiver of the application of federal and state law makes [the delegation] clause invalid.' As such, because Plaintiff has adequately challenged the delegation

10

provision, it should be found unenforceable for the same reasons the arbitration clause is invalid.

[*Id.* at 430 (citation omitted) (citing *MacDonald v. CashCall, Inc.*, 2017 WL 1536427, at *13 (D.N.J. Apr. 28, 2017))]. Wood therefore states that the delegation provision should be found unenforceable for the same reasons as the arbitration agreement, yet he maintains that because he specifically called attention to the delegation provision, he has made a sufficient challenge separate from his challenge to the overall arbitration agreement. [*Id.* at 431]. However, the Sixth Circuit has made clear that a challenge to a delegation clause that "simply recycle[s] the same argument that pertain to enforceability of the agreement as a whole" cannot serve as the basis for challenging a delegation clause. *In re StockX*, 19 F.3d at 886. Wood's initial argument is simply that the choice-of-law provision renders the agreement as a whole—and therefore the delegation provision within it—unenforceable. [*Id.* at 430]. This argument overlaps entirely with the argument that the agreement as a whole is unenforceable, and thus does not "rest, in part, on different factual or legal grounds" than those applicable to the agreement as a whole. *Becker*, 39 F.4th at 356. And Wood's "mere statements" that the delegation provision is invalid for the same reason as the arbitration agreement as a whole does not constitute a specific challenge. *In re StockX*, 19 F.4th at 885.

A party may, however, "challenge both the entire agreement and a delegation provision under the same *legal doctrine*." *Id.* at 885. Wood does so by asserting that agreement's choice-of-law clause would preclude the arbitrator from relying on state law in determining whether the claims are arbitrable. [DE 20 at 431]. And because of this, "the arbitrator could not ask whether the arbitration clause—and its complete exclusion of state law—would violate public policy against arbitration clauses that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" [*Id.* (quoting *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235 (2013))]. Consequently, Wood argues that the prospective waiver doctrine specifically renders

the delegation provision—separate from the agreement as a whole—unenforceable because the arbitrator would be in the "impossible position" of determining arbitrability without the benefit of state law. [*Id.*]. Wood therefore attacks the enforceability of the delegation provision using the same legal doctrine he uses against the arbitration agreement as a whole, and he does so by independently applying the doctrine to the delegation provision. This constitutes a specific challenge to the delegation provision. *See Swiger*, 989 F.3d at 506 ("A party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, but merely challenging the entire agreement will not suffice.").

3. Wood's Specific Challenge to Delegation

Finally, the Court considers whether Wood's specific challenge to the delegation provision renders the "clear and unmistakable" delegation invalid. Wood maintains that the delegation provision specifically is unenforceable because the loan agreement's overall choice-of-law provision prospectively waives the application of state law, thus depriving the arbitrator of the benefit of substantive state law when determining the arbitrability of the claims. [DE 20 at 431]. Yet, this exact challenge is one that the arbitrator has the power to consider under the terms of the arbitration agreement, which states that it is governed by the FAA "for all purposes." [DE 1-1 at 20]. The parties agreed that all aspects of the agreement would be governed by "the laws of the Tribe and *applicable U.S. federal law*." [DE 1-1 at 18 (emphasis added)]. For purposes of arbitrating the threshold question of arbitrability, the agreement makes clear that the "applicable U.S. federal law" is the FAA. [*Id.* at 20]; *see also Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *12–14 (11th Cir. Oct. 3, 2024) (per curiam) (explaining that, under the terms of a similar agreement, the "applicable federal law" is the FAA). As a result, in deciding whether the claims are arbitrable, the arbitrator will apply the FAA, which expressly allows the

arbitrator to find the delegation provision unenforceable upon "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Wood will therefore be permitted to raise any traditional contract defense when the arbitrator determines arbitrability. This means that "as applied to the delegation provisions, the choice-of-law provisions do not foreclose the arbitrator's ability to consider Plaintiffs' argument that their arbitration agreements are unenforceable under § 2 of the FAA." *Dunn*, 2024 WL 4379966, at *12.

Moreover, Wood's exact argument was recently rejected by another judge in this Court in *Wood v. W6LS, Inc., and Caliber Fin. Servs, Inc.*, No. 4:24-cv-128-DJH, slip op. at 7–9 (W.D.K.Y. Sept. 20, 2025). There, the same named Plaintiff brought suit against two other loan providers similarly alleging usurious loan practices. *Id.* at 1. The loan agreements at issue, like the ones here, contained a provision outlining the law to be used in arbitration as "tribal law and applicable federal law." *Id.* at 2. Wood asserted that this language violated the prospective waiver doctrine, which prohibits arbitration agreements that strip plaintiffs of substantive rights under federal or state law. *See id.* at 7 (citing *Viking River Cruises, Inc. v. Morana*, 596 U.S. 639, 653 n.5 (2022)). And, just as he does here, Wood specifically challenged the enforceability of the delegation provision, maintaining that the choice-of-law clause prevents the arbitrator from "consider[ing] state law when determining arbitrability." *Id.* at 6. In granting the motion to compel arbitration, the Court explained that "Wood's agreements allow for the application of federal law, including the FAA, at the arbitrability stage," which "allow[s] him to raise choice-of-law objections with the arbitrator." *Id.* at 8. In other words, the Court found that the question of whether Kentucky state law applies to the loan agreements is itself a question that the arbitrator must decide. *Id.* at 9. The Court also explained that Wood's "[c]oncern that the choice-of-law clause might bar the enforcement of substantive rights should generally be dealt with at the award-enforcement stage."

*Id.* at 7 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995) and then citing *Mitsubishi Motors*, 473 U.S. at 638). It noted that a "court should find a prospective waiver at the arbitration-enforcement stage only if there is no 'uncertainty' that the 'choice of law would preclude otherwise applicable . . . substantive statutory remedies.'" *Id.* (quoting *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (citations omitted)). Because the agreements called for the application of the FAA at the arbitrability, it was not obvious that the choice-of-law provision would "preclude" substantive statutory remedies. *Wood v. W6LS, Inc.*, slip op. at 8.

The Court adheres to the reasoning of the aforementioned decision and likewise notes that Wood may raise his choice-of-law objections with the arbitrator. When there is uncertainty as to whether a choice-of-law provision "would preclude otherwise applicable . . . substantive statutory remedies, the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies." *Dillon*, 856 F.3d at 334 (quoting *Vimar*, 515 U.S. at 540–41). Until the arbitrator has made that decision, the prospective waiver doctrine is not an issue. *See Vimar*, 515 U.S. at 540–41 (finding that plaintiff prematurely challenged the choice-of-law provision because choice of law must "be decided in the first instance by the arbitrator," and only after that decision is made will it be clear if the parties prospectively waived their substantive statutory rights). The Supreme Court came to this same conclusion in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the case in which the prospective waiver doctrine originated. 473 U.S. at 666 n. 19. There, the Court enforced arbitration of federal claims despite the contract containing a choice-of-law clause selecting the laws of the Swiss Confederation. *Id.* While the party opposing arbitration brought a prospective waiver challenge, the Court explained that it

would not consider that argument "at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award." *Id.*

Here, Ascend likewise seeks to enforce an agreement to arbitrate, so Wood's prospective waiver challenge is premature. The Court therefore finds that, given the clear and unmistakable delegation of arbitrability, the question of arbitrability of Wood's claims must be decided by an arbitrator, not the Court. Accordingly, the Court does not address Wood's arguments with respect to the enforceability of the arbitration agreements. [*See* DE 20 at 427]. Moreover, while Wood argues that individual arbitration should not be compelled because the agreement's class action waiver is invalid, this argument is premised on his argument that "the arbitration provision is invalid." [DE 20 at 432]. Since the Court has not found the arbitration agreement invalid and has instead found that the agreement delegates all questions of arbitrability to the arbitrator, the Court finds that individual arbitration is proper.

Finally, because the Court has determined that arbitration is proper and Ascend has requested a stay pending arbitration, the Court will order the matter stayed. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (requiring district court to stay proceedings when the court "finds that a lawsuit involves and arbitrable dispute, and a party requests a stay pending arbitration").

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Ascend's motion to compel arbitration. [DE 17]. This matter is **STAYED** pending arbitration pursuant to 9 U.S.C. § 3. The parties are **ORDERED** to submit a joint status report every **ninety (90) days** and report on the outcome of the arbitration within **twenty (20) days** of its conclusion.

Rebecca Grady Jennings, District Judge
United States District Court

15

January 15, 2026